# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **RENEE CLARK,**<br>2420 Villa West Drive<br>Findlay, Ohio 45840<br><br>    **Plaintiff,**<br><br>vs.<br><br>**RUSK INDUSTRIES, INC. d/b/a**<br>**EVERDRY WATERPROOFING,**<br>c/o Kenneth Rusk, Statutory Agent<br>2930 Centennial Rd.<br>Toledo, Ohio 43617<br><br>    **Defendant.** | **CASE NO.:**<br><br>Judge<br><br><br>**COMPLAINT WITH JURY DEMAND**<br><br>Widman & Franklin, LLC<br><br>Kera L. Paoff (0082674)<br>Marilyn L. Widman (0068446)<br>405 Madison Ave., Suite 1550<br>Toledo, Ohio 43604<br>Ph.: (419) 243-9005<br>Fax: (419) 243-9404<br>kera@wflawfirm.com<br>marilyn@wflawfirm.com<br>Attorneys for Plaintiff,<br>Renee Clark |

Now comes Plaintiff, Renee Clark, complaining of Defendant Rusk Industries, Inc. d/b/a Everdry Waterproofing, and alleges as follows:

## PARTIES

1. Plaintiff Renee Clark ("Clark"), is an individual citizen of the State of Ohio, residing in the City of Findlay, County of Hancock.

2. Defendant Rusk Industries, Inc. d/b/a Everdry Waterproofing ("Defendant"), is a domestic corporation doing business in the State of Ohio.

1

## JURISDICTION AND VENUE

3. Jurisdiction over Count One is conferred upon this Court by 29 U.S.C. § 216 and 28 U.S.C. § 1331 because the claims arise out of the laws of the United States.

4. This Court has supplemental jurisdiction over Clark's state court claims because those claims arise from the same facts and circumstances as Count One.

5. Venue is properly laid in the Northern District of Ohio under 28 U.S.C § 1391(b) because the claims alleged herein arose in Hancock County, Ohio, and Defendant is doing business in Lucas County, Hancock County and other counties within the jurisdiction of the Court.

## FACTUAL ALLEGATIONS

6. Clark began working for Defendant at its Findlay, Ohio location in October of 2019.

7. Throughout her entire employment, Clark held the position of HR manager for the Findlay location.

8. Clark had an excellent work record and performed her job duties competently.

9. Clark was qualified for the position that she held.

10. During the application/interview process for obtaining her position with Defendant, Clark became aware of what she believed to be unlawful and discriminatory hiring practices.

11. During her second interview, Clark, among other things, was asked questions about her family life, whether she was married, and/or whether she had children.

12. In addition, on its employment application, Defendant asks applicants their dates of birth.

13. Clark opposed these practices she believed to be unlawful.

14. As HR Manager, Clark's duties included recruitment and hiring.

15. In connection with these duties, the Findlay Office Manager, Matt Jordan ("Jordan") and the Canvassing Manager, Brett Knopp ("Knopp"), told Clark that she was not to hire African Americans for the canvasser position.

16. Clark protested; however, Defendant's response was that she was still not to hire any African Americans for the canvasser position.

17. Following the global pandemic relating to COVID-19, Clark, consistent with COVID-19 protocols, made signs for the Findlay office outlining CDC recommended safety procedures and requirements of the State of Ohio (*e.g.*, wearing a mask, social distancing, etc.).

18. On more than one occasion, Jordan reprimanded Clark for creating and posting the signage and demanded that she remove and destroy them.

19. During the time period when the Governor of the State of Ohio declared a state of emergency and the Department of Health issued a Stay at Home Order, Defendant encouraged its employees, including Clark, to return to work prior to the restrictions being lifted.

20. Clark refused as she believed returning to work would violate the Order.

21. After the restrictions were eased, Clark returned to work for Defendant.

22. In September of 2020, Clark and other employees were unknowingly exposed to COVID-19 by another employee at work.

23. Shortly thereafter, several employees began experiencing symptoms and tested positive for COVID-19.

24. Clark informed Jordan of the positive test results; that employees must be informed of potential exposure; that per guidelines employees should be quarantined or tested; and that Defendant could not hide this exposure.

25. Clark complained both verbally and in writing to Jordan regarding the various COVID-19 related issues, but nothing was done to address Clark's concerns.

26. Clark also had both verbal and written communications with several employees, concerning the lack of protocols relating to COVID-19 and the fact that employees were being exposed to COVID-19 at work.

27. During this time, Clark tested positive for COVID-19 and Clark, therefore, was subject to quarantine for at least 14 days.

28. As was protocol, the local health department became involved in the situation.

29. Jordan contacted Clark and demanded that she needed to tell the health department that Defendant was following all COVID-19 related protocols and that the Findlay office was being cleaned regularly.

30. Clark attempted to protest as this was not true – Defendant was not following any COVID-19 protocols and the office was not being disinfected on a routine basis.

31. Jordan simply demanded Clark not be truthful with the health department.

32. Clark did ultimately receive a call from the health department and informed the representative that Defendant was not following protocols.

33. Clark also launched a formal complaint against Defendant with the health department.

34. Upon information and belief, the health department contacted Defendant which enraged Jordan and other management employees who demanded to know who made the formal complaint and/or contacted the health department.

35. In addition, Defendant attempted to interfere with and/or encourage Clark to ignore her mandatory quarantine period.

36. Jordan contacted Clark on a daily basis during her quarantine and discussed her health and other topics which Clark took as him encouraging her to cut her quarantine short and return to work.

37. On or about October 5, 2020, Clark's quarantine ended and she returned to work.

38. Shortly after arriving at work, Jordan called her into his office and terminated her employment allegedly because Defendant was "going in a different direction".

39. Defendant's proffered reason for Clark's termination is pretext.

## COUNT ONE
## Unlawful Retaliation in Violation of the Emergency Paid Sick Leave Act
## As Enforced through the Fair Labor Standards Act

40. Defendant was, at all times relevant to this Complaint, engaged in commerce or in an industry or activity affecting commerce and employed fewer than 500 employees, and therefore, is an employer as defined in the Emergency Paid Sick Leave Act.

41. Clark was subject to a quarantine or isolation order; had been advised to self-quarantine by a health care provider; and/or was experiencing symptoms of COVID-19 and sought a medical diagnosis and therefore, was entitled to Emergency Paid Sick Leave.

42. Defendant violated the Emergency Paid Sick Leave Act by discriminating against and discharging Clark because she exercised her rights under the Families First Coronavirus Response Act.

43. As a direct and proximate cause of Defendant's conduct, Clark has been damaged. Clark has suffered, among other things, lost wages and fringe benefits, loss of future earnings and front pay, garden variety emotional distress, attorneys' fees, costs, and other recoverable damages.

## COUNT TWO
## VIOLATION OF THE OHIO WHISTLEBLOWER STATUTE

44. Defendant employed one or more persons and therefore is an employee as defined in the Ohio Whistleblower Statute, O.R.C. § 4113.51.

45. In engaging in the actions against Clark described herein, Defendant took disciplinary and retaliatory action against Clark for making the reports described herein, in violation of the Ohio Whistleblower Act, Ohio Revised Code §4113.52.

46. As a direct and proximate cause of Defendant's conduct, Clark has been damaged. Clark has suffered, among other things, lost wages and fringe benefits, loss of future earnings and front pay, garden variety emotional distress, attorneys' fees, costs, and other recoverable damages.

## COUNT THREE
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

47. There is a strong public policy to lessen the effect of the global pandemic that is COVID-19, to slow the spread of COVID-19, to follow protocols set to achieve these goals and to provide local, state and federal agencies with truthful information to assist in the gathering of information related to and the tracking of COVID-19 cases.

48. There is also a strong public policy in preventing any imminent risk of physical harm to persons or a hazard to public health and safety.

49. Defendant's action of discriminating against and terminating Clark jeopardizes the clear public policies of the State of Ohio and the United States of America.

50. As a direct and proximate cause of Defendant's conduct, Clark has been damaged. Clark has suffered, among other things, lost wages and fringe benefits, loss of future earnings and front pay, garden variety emotional distress, attorneys' fees, costs, and other recoverable damages.

## COUNT FOUR
## RETALIATION IN VIOLATION OF O.R.C.§ 4112.02

51. Defendant, at all times relevant to this Complaint, employed four (4) or more employees and therefore is an employer as defined in O.R.C. § 4112.01.

52. Clark engaged in protected activity by opposing the discriminatory conduct as described above.

53. Defendant terminated Clark's employment in retaliation for her opposition in violation of O.R.C. § 4112.02.

54. As a direct and proximate cause of Defendant's conduct, Clark has been damaged. Clark has suffered, among other things, lost wages and fringe benefits, loss of future earnings and front pay, garden variety emotional distress, attorneys' fees, costs, and other recoverable damages.

**WHEREFORE**, Clark prays that this Court award her as follows:

    A.    Such equitable relief as is proper as compensation for Clark's loss of the opportunity to engage in gainful employment, including relief in the form of front pay;

    B.    An amount to be determined at trial for compensatory damages, and the humiliation, embarrassment, loss of reputation and loss of self-esteem that resulted from Defendant's abrupt termination of her employment;

    C.    An amount to be determined at trial as compensation for lost insurance and other fringe benefits;

    D.    Back pay from the date of trial with interest;

    E.    Punitive damages;

    F.    Liquidated damages;

    G.    All remedies available by law;

    H.    Reasonable attorney's fees and the costs of this action; and

    I.    Such other and further relief as may be just and equitable.

Respectfully submitted,

WIDMAN & FRANKLIN, LLC

*/s/Kera L. Paoff*
Kera L. Paoff
Attorney for Plaintiff


**PLAINTIFF DEMANDS TRIAL BY JURY**

*/s/Kera L. Paoff*
Kera L. Paoff